UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

          - v -                         :

**ANDRE MATHEWS,**                      :                    **07 CR 589 (RJS)**

          Defendant.                    :

- - - - - - - - - - - - - - - - - x


### MEMORANDUM OF LAW IN SUPPORT OF ANDRE MATHEWS' MOTION TO DISMISS THE INDICTMENT


                         LEONARD F. JOY, ESQ.
                         Federal Defenders of New York, Inc.
                         Attorney for Defendant
                          **ANDRE MATHEWS**
                         52 Duane Street - 10th Floor
                         New York, New York 10007
                         Tel.: (212) 417-8713


**ROBERT M. BAUM, ESQ.**

     <u>**Of Counsel**</u>


TO:  Michael Garcia, ESQ.
     United States Attorney
     Southern District Of New York
     One St. Andrew's Plaza
     New York, New York  10007
     Attn: **DAVID A. O'NEIL, ESQ.**
          Assistant United States Attorney

## TABLE OF CONTENTS

                                                                    Page

PRELIMINARY STATEMENT..........................................1

STATEMENT OF FACTS.............................................1

    THE INDICTMENT............................................1

    THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT.........2

SUMMARY OF ARGUMENT...........................................4

ARGUMENT......................................................7

    POINT I:    THE INDICTMENT MUST BE DISMISSED BECAUSE CONGRESS
                LACKS THE POWER TO FORCE INDIVIDUALS CONVICTED OF
                PURELY LOCAL SEX OFFENSES TO REGISTER AS SEX
                OFFENDERS........................................7

    POINT II:   THE INDICTMENT MUST BE DISMISSED BECAUSE SECTION
                2250 VIOLATES THE COMMERCE CLAUSE.............. 14

    POINT III:  THE INDICTMENT MUST BE DISMISSED BECAUSE IT
                VIOLATES THE EX POST FACTO CLAUSE OF THE
                CONSTITUTION.................................. 20

    POINT IV:   THE INDICTMENT MUST BE DISMISSED BECAUSE THE
                STATUTE VIOLATES DUE PROCESS.................. 26

    POINT V:    THE INDICTMENT MUST BE DISMISSED BECAUSE THE
                STATUTE IMPERMISSIBLY ENCROACHES UPON STATE POWER
                AND THEREFORE VIOLATES THE TENTH AMENDMENT..... 29

    POINT VI:   THE INDICTMENT MUST BE DISMISSED BECAUSE SORNA
                VIOLATES THE NON-DELEGATION DOCTRINE........... 31

CONCLUSION................................................... 35

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        - v -                     :
                                             **07 CR 187 (RJS)**
**ANDRE MATHEWS,**                :

        Defendant.                :

- - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF ANDRE MATHEWS' MOTION TO DISMISS THE INDICTMENT

### PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant ANDRE MATHEWS in support of his motion to dismiss the Indictment.

Mr. Mathews is charged in a one-count Indictment with traveling in interstate commerce and knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250 ("Section 2250"). Mr. Mathews has entered a plea of not guilty to the Indictment.

### STATEMENT OF FACTS

The Indictment

On December 16, 1985, in Supreme Court, New York County, Mr. Mathews pled guilty to sodomy in the first degree, and was

1

sentenced to three to nine years in prison.  On February 14, 1996, Mr. Mathews registered with the New York State Sex Offender Registry as required by N.Y. Correct. Law § 168-f.

The Indictment, annexed as Exhibit A, alleges that Mr. Mathews, "knowingly did travel in interstate commerce, and fail to register and update a registration as required by the Sex Offender Registration and Notification Act, to wit, from August 1, 2006 through April 19, 2007, MATHEWS lived in New Jersey and traveled to New York without updating his information with New York's sex offender database, or registering in New Jersey as required by law."

The Sex Offender Registration and Notification Act

SORNA was enacted on July 27, 2006.  SORNA requires each state to maintain a sex offender registry that complies with the rigid specifications of the statute.  42 U.S.C. § 16912.  States are directed to make it a felony offense for an offender to fail to comply with the registration requirements of SORNA.  42 U.S.C. § 16913(e).  SORNA gives states three years from its effective date to implement its requirements.  42 U.S.C. § 16924.  A state that fails to comply with the requirements of SORNA faces a reduction in federal funding.  42 U.S.C. § 16925.  To date, neither New York nor New Jersey has enacted regulations in response to SORNA.

SORNA further purports to impose federal registration

2

requirements on individual sex offenders.  See 42 U.S.C. §§
16913-16 ("The Registration Requirements"). Specifically, it
requires sex offenders to register and keep their registry
current in the jurisdiction in which they reside.  42 U.S.C. §
16913(a).  A sex offender is required to provide certain
information to "the appropriate official for inclusion in the sex
offender registry," including his name, address, phone number,
place of employment, and "[a]ny other information required by the
Attorney General."  42 U.S.C. § 16914(a).  A sex offender is
required to notify a jurisdiction in which he is registered of
any change of address within three business days of the change.
42 U.S.C. § 16913©.  A sex offender is also required to appear in
person at a local registry in order to be photographed and verify
the information on file every three months for a tier III
offender, six months for a tier II offender, and twelve months
for a tier I offender.  42 U.S.C. § 16916.

SORNA defines "sex offender" broadly as "an individual
convicted of a sex offense."  42 U.S.C. § 16911(1).  A "sex
offense" is defined as "a criminal offense that has an element
involving a sexual act or sexual contact with another."  42
U.S.C. § 16911(5)(A)(I).  The term "criminal offense" includes
purely intrastate offenses.  42 U.S.C. § 16911(6).  Therefore,
The Registration Requirements purport to regulate individuals
convicted of sex offenses under state laws, even if there is no

connection to interstate activities.

SORNA also contains a criminal provision, Section 2250, that provides:

Whoever

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(a) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by Reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(b) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

## SUMMARY OF ARGUMENT

The Indictment must be dismissed for a number of reasons. First, Congress lacks the power under the Commerce Clause to force citizens who have been convicted of purely local offenses under state law to register as sex offenders. The Registration Requirements, contained in 42 U.S.C. §§ 16913-16916, are therefore unconstitutional. If the statute requiring sex offenders to register is unconstitutional, then the constitutionality of Section 2250 need not be addressed since the

4

statute under which Mr. Mathews is charged, only applies to defendants who are "required to register under the Sex Offender Registration and Notification Act." 18 U.S.C. § 2250(a)(1). Because Congress lacks the power to require Mr. Mathews to register in the first place, this element of Section 2250 cannot be met and the Indictment must be dismissed.

Second, even if Congress has the authority to enact the Registration Requirements, Section 2250 itself violates the Commerce Clause because Congress lacks the power to federally criminalize a local sex offender's failure to register in a state-run registry. Although Section 2250, unlike the Registration Requirements, contains a jurisdictional element – the defendant must travel in interstate commerce – Congress failed to require that the purpose of the travel relate in any way to the failure to register. Therefore, the jurisdictional element is  insufficient to bring the statute within any of the acceptable categories of Commerce Clause legislation. Since Mr. Mathews is being prosecuted under an unconstitutional statute, the Indictment must be dismissed.

Third, although SORNA was enacted on July 27, 2006, it could not constitutionally be applied to Mr. Mathews until the Attorney General promulgated Interim Rules making SORNA's criminal provisions applicable to persons convicted before that date. As a result, the effective date of the statute for Ex Post Facto

analysis is February 28, 2007. The indictment charges that the offense was committed on August 1, 2006 and continued to April 19, 2007. Since failure to register is not a continuing offense, his prosecution for a crime committed in August, 2006 under Section 2250 violates the Ex Post Facto Clause.

Fourth, the Indictment must be dismissed because the prosecution of Mr. Mathews under Section 2250 violates his right to due process. Mr. Mathews had no notice of SORNA's requirements when his alleged misconduct occurred, because the statute had not yet been deemed applicable to sex offenders who were convicted prior to February 28, 2007. In addition, neither New York nor New Jersey has created SORNA-compliant registries, making it impossible for Mr. Mathews to comply with the Registration Requirements. Since Mr. Mathews had no notice of the Registration Requirements, and it would have been impossible for him to comply with them, his prosecution is barred on due process grounds.

Fifth, Section 2250 is an unconstitutional exercise of federal power over the states and therefore violates the Tenth Amendment. SORNA forces state officials to enforce a federal regulatory scheme, which is prohibited by the Tenth Amendment and the principles of federalism. The statute is therefore unconstitutional and the Indictment must be dismissed.

Sixth, SORNA violates the non-delegation doctrine contained

6

in Article I §§ 1, 8 of the Constitution by delegating to the Attorney General the power to determine the retroactivity of the Registration Requirements.  This is an unconstitutional delegation of legislative authority to the executive branch.  The statute is therefore unconstitutional and the Indictment must be dismissed.

## ARGUMENT

### POINT I

**THE INDICTMENT MUST BE DISMISSED BECAUSE CONGRESS LACKS THE POWER TO FORCE INDIVIDUALS CONVICTED OF PURELY LOCAL SEX OFFENSES TO REGISTER AS SEX OFFENDERS.**

In order to violate Section 2250 a defendant must first be "required to register under the Sex Offender Registration and Notification Act."  18 U.S.C. § 2250(a)(1).  However, as explained below, Congress lacks the authority to direct individuals convicted of purely local offenses to register as state sex offenders.  Therefore Congress could not constitutionally require Mr. Mathews, who was convicted of a purely local offense, to register under SORNA, and the first element of Section 2250 cannot be met.  The Indictment must therefore be dismissed.

SORNA creates affirmative requirements for "sex offenders" to register with their local jurisdiction.  42 U.S.C. §§ 16913-16916.  As described above, SORNA's definition of "sex offender" includes citizens who have been convicted solely under state

7

criminal laws, even if their offense has no relation to interstate activity or commerce. 42 U.S.C. § 16911. The Registration Requirements are not directed to the states, but to individuals. For example, 42 U.S.C. §§ 16913(a) requires a sex offender to "register and keep the registration current, in each jurisdiction where the offender resides ... is an employee and ... is a student."

Congress may only enact legislation pursuant to the powers specifically delegated to it by the Constitution. United States v. Lopez, 514 U.S. 549, 552 (1995). "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." United States v. Morrison, 529 U.S. 598, 607 (2000). SORNA does not itself explain under what authority Congress imposes the Registration Requirements, but the only power through which Congress could conceivably enact them is its power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. Art. I § 8, cl. 3. However, under modern Commerce Clause jurisprudence, as articulated in United States v. Lopez, 514 U.S. 549 (1995), United States v. Morrison, 529 U.S. 598 (2000), and United States v. Jones, 529 U.S. 848 (2000), it is clear that Congress does not have the power to impose Registration Requirements on individual citizens convicted of purely intrastate offenses.

As the Court articulated in Morrison, "modern Commerce

Clause jurisprudence has 'identified three broad categories of activity that Congress may regulate under its commerce power.'" 529 U.S. at 608-609, quoting Lopez, 514 U.S. at 558.  First, Congress may regulate the use of and channels of interstate commerce, such as interstate highways, the mail or air traffic routes.  Id.  Second, Congress can regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce.  Id.  Finally, Congress can regulate those activities that have a substantial effect on interstate commerce. Id.

The Registration Requirements have nothing to do with the channels of interstate commerce.  Thus, the Registration Requirements cannot be supported by Congress' power to regulate them.  Further, the Registration Requirements are imposed on individuals who are not in interstate commerce nor have any connection to interstate commerce.  Thus, the second Lopez category, protecting the instrumentalities of, or things in interstate commerce, cannot apply.  The Registration Requirements can therefore only be upheld if they regulate "those activities that substantially affect interstate commerce."  Lopez, 514 U.S., at 558-559.

The Supreme Court, in Lopez and Morrison, set forth several factors that indicate whether a regulation can be upheld as an activity that substantially affects interstate commerce.  As an

9

initial matter, it is relevant whether the activity regulated has an economic character. Morrison, 529 U.S. at 611 ("Lopez's review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor"). In Lopez, the Gun-Free School Zones Act was struck down in large part because "neither the actors nor their conduct ha[d] a commercial character, and neither the purposes nor the design of the statute ha[d] an evident commercial nexus." 210 at U.S. 559-560. Similarly, the Registration Requirements have no commercial character, nor any relation to economic activity of any kind. The stated purpose of SORNA is "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. These purposes have no economic character.

The second factor examined in Lopez and Morrison is whether the statute contained a "jurisdictional element" such as a requirement of travel across state lines for the purposes of committing the regulated act. Morrison, 529 U.S. at 611-612. Although Section 2250, SORNA's criminal provision, requires a sex offender to "travel in interstate commerce" in order to qualify him for federal prosecution, the Registration Requirements set forth in 42 U.S.C. § 16913, contain no such jurisdictional

10

element.  The Registration Requirements apply to citizens whose criminal activities are purely intrastate, and who never travel in interstate commerce.

Third, the existence of congressional findings that indicate that the statute is a valid exercise of Congress' Commerce Clause power will at least enable a court "to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce." Lopez, 514 U.S. at 563.  SORNA is a subchapter of the Adam Walsh Child Protection Act of 2006, H.R. 4472, 109th Cong. (2nd Sess. 2006), ("Adam Walsh Act"), which enacts a wide range of legislation in addition to SORNA. Although Congress included findings in other sections of the Adam Walsh Act,[1] SORNA contains no such findings.  Like the Gun Free School Zone Act, SORNA is unsupported by legislative findings indicating that purely local sex crimes have any link with interstate commerce.[2]

---

[1] For example, Title V of the Adam Walsh Act, entitled "Child Pornography Prevention," contains findings that "intrastate incidents of production, transportation, distribution, receipt, advertising, and possession of child pornography, as well as the transfer of custody of children for the production of child pornography, have a substantial and direct effect upon interstate commerce..." H.R.4472, Sec. 501.

[2] Even the existence of legislative findings does not guarantee that the statute will be upheld as a valid exercise of Congressional power.  The Violence Against Women Act, at issue in Morrison, was accompanied by "numerous findings regarding the serious impact that gender-motivated violence has on victims and their families." Morrison, 529 U.S. at 614.  The Court still struck down the statute, holding that "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." Id.  Rather, the Court held that the determination of whether an activity sufficiently affects interstate commerce is for the judiciary. Id.

11

Finally, the Court will examine the extent of the relationship between the regulated activity and its effects on commerce. Morrison, 529 U.S. at 612. There is no indication in the statute, or anywhere else, that the activities sought to be regulated by SORNA have any effect on commerce at all, not even an attenuated one. Nor can such an effect be hypothesized by the aggregate economic effects that sex crimes and sex offenders inflict upon society. The Supreme Court has flatly rejected the notion that the aggregate effect on interstate commerce of local criminal activity can be used to justify the invocation of Congress' Commerce Clause power. Morrison, 529 U.S. at 617. Nor can the costs of crime control or the effects of crime on "national productivity" support the use of the Commerce Clause to regulate intrastate criminal activity. Lopez, 514 U.S. at 564; Morrison, 529 U.S. at 598, 612-613.

Each of the above four factors indicates that the Registration Requirements are unconstitutional. First, the regulated activity has no economic character. Second, the Registration Requirements contain no jurisdictional element. Third, the statute contains no congressional findings indicating a link with interstate commerce. Finally, the regulated activities have an insufficient effect on interstate commerce to support an exercise of Commerce Clause power. For all of these reasons, the Court must hold the Registration Requirements

12

unconstitutional and dismiss the Indictment against Mr. Mathews.

In Morrison, after applying all of these factors, the Court ruled that "[g]ender motivated crimes of violence are not, in any sense of the phrase, economic activity," and struck down the Violence Against Women Act as an impermissible use of Congress' power under the Commerce Clause.  Id. at 613.  Similarly, in Lopez, the Court held that the Gun Free School Zones Act, "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms."  Lopez, 514 U.S. at 561.  Purely local sex offenses are similarly non-economic and, while validly regulated by the states, are not subject to regulation by Congress under the Commerce Clause.

Nor is this analysis in any way affected by the Supreme Court's most recent Commerce Clause case, United States v. Raich, 545 U.S. 1 (2005).  In Raich, the Court held that the application of a Controlled Substances Act ("CSA") provision criminalizing the distribution and possession of medical marijuana was legally enacted under the Commerce Clause, even if the marijuana was locally grown, consumed locally, and never traveled in interstate commerce.  The Court held that because marijuana is a commodity that has an interstate market, the CSA is connected to "economic" activity and is therefore a valid exercise of Congress' Commerce Clause powers:

13

[u]nlike those at issue in <u>Lopez</u> and <u>Morrison</u> the
activities regulated by the CSA are quintessentially
economic.  "Economics" refers to "the production,
distribution, and consumption of commodities."
Webster's Third New International Dictionary 720
(1966).  The CSA is a statute that regulates the
production, distribution, and consumption of
commodities for which there is an established, and
lucrative, interstate market.  Prohibiting the
intrastate possession or manufacture of an article of
commerce is a rational (and commonly utilized) means of
regulating commerce in that product.

<u>Raich</u>, 545 U.S. at 25-26.

Clearly this reasoning has no application to SORNA, which in

no way regulates anything resembling economic activity.  SORNA,

whose stated purpose is "to protect the public from sex offenders

and offenders against children," 42 U.S.C. § 16901, far more

closely resembles the statutes struck down in <u>Lopez</u> and <u>Morrison</u>.

For the reasons stated above, the Registration Requirements

of SORNA are unconstitutional.  As it is necessary for a

defendant to be "required to register under the Sex Offender

Registration and Notification Act" in order to violate Section

2250, and Mr. Mathews cannot be required to register under SORNA

because the Registration Requirements are unconstitutional, the

Indictment against him must be dismissed.

## <u>POINT II</u>

**THE INDICTMENT MUST BE DISMISSED BECAUSE
SECTION 2250 VIOLATES THE COMMERCE CLAUSE.**

Just as the Registration Requirements are unconstitutional,

SORNA's criminal provision, Section 2250, is also invalid under

14

the Commerce Clause.  Section 2250 does not fall in any of the "three broad categories of activity that Congress may regulate under its commerce power," discussed above.  See Morrison, 529 U.S. 608-609, quoting Lopez, 514 U.S. at 558.  It does not regulate the use of and channels of interstate commerce, it does not regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce, and it does not regulate those activities that have a substantial effect on interstate commerce.  Congress therefore lacks the authority to enact Section 2250, and the Indictment must be dismissed.

The Government might argue that because Section 2250 requires that a defendant "travel in interstate or foreign commerce," it falls into the second Lopez category, which permits legislation regulating "people or things in interstate commerce." This reasoning must be rejected.  Unlike other, similar statutes, such as the Travel Act, 18 U.S.C. 1952, which requires a defendant to travel in interstate commerce with the intent to commit certain prohibited acts, the travel element of Section 2250 does not require that the travel occur in connection to a defendant's failure to register.  Thus, if a defendant is convicted of a sex offense in New York, fails to register in New York, and then takes the train to New Jersey simply to visit his sick mother, he violates Section 2250 even though his travel has no interstate connection to the failure to register.

15

Further, the statute does not specify when the travel must have occurred. If a defendant traveled out of state ten years before he was required to register, he would still have "traveled in interstate or foreign commerce" under Section 2250. Upholding Section 2250 based on its travel requirement would allow Congress to federalize every local criminal offense simply by making it a crime for someone who committed a local offense to travel in interstate commerce at some point in his life. Clearly, some nexus must exist between the criminal activity and the interstate travel in order to satisfy the Commerce Clause. Because Section 2250 contains no such nexus, it cannot be said to regulate "people in interstate commerce."

Nor can Section 2250 be upheld as a regulation of an activity that "substantially affects interstate commerce" under the Court's third category of valid Commerce Clause legislation. The analysis applied in Point I above to SORNA's registration requirements under Morrison and Lopez also applies to Section 2250, which seeks to regulate the same activities. As noted above, to determine if an activity "substantially affects interstate commerce" a court must examine; (1) whether the activity has an economic character, Morrison, 529 U.S. at 611, (2) whether the statute contains a "jurisdictional element" such as a requirement to travel across state lines for the purposes of committing the regulated act, Id. at 611-612, (3) whether there

16

are congressional findings indicating the statute is a valid exercise of Congress' Commerce Clause power, <u>Lopez</u>, 514 U.S. at 563, and (4) the extent of the attenuation between the regulated activity and its affects on commerce.  <u>Morrison</u>, 529 U.S. at 612.

First, like the Registration Requirements, discussed in Point I, Section 2250 regulates activity that is non-economic in nature.  Thus, it does not "substantially affect interstate commerce."  <u>See</u> <u>Morrison</u>, 529 U.S. at 611; <u>Lopez</u>, 210 U.S. at 559-560.

Second, although Section 2250 has a "jurisdictional statement" that requires a defendant to have "traveled in interstate or foreign commerce," this is insufficient by itself to make the statute a legitimate exercise of Commerce Clause authority.  The presence of a jurisdictional element is not dispositive, but rather only "<u>may</u> establish that the enactment is in pursuance of Congress' regulation of interstate commerce." <u>Morrison</u>, 529 U.S. at 612 (emphasis added).  Section 2250's jurisdictional element is insufficient for a court to declare that the statute has an effect on interstate commerce because there is no nexus between the travel and the defendant's failure to register, which is a purely local act.  Accordingly, the jurisdictional element of Section 2250 cannot bring the statute into the third category of acceptable Commerce Clause legislation.

17

Third, as mentioned above, SORNA contains no congressional findings that support the conclusion that Section 2250 has an effect on interstate commerce.

Finally, just like the Registration Requirements, any economic effect that the activities regulated by Section 2250 might have on interstate commerce is too attenuated to bring the statute within the authority of the Commerce Clause.  The potential aggregated economic effects of sex offenders' failure to register are insufficient to sustain the statute under both Lopez and Morrison.  Morrison, 529 U.S. at 617; Lopez, 514 U.S. at 564.

Although two district courts have held that Section 2250 was validly enacted under the Commerce Clause, neither court examined the constitutionality of the Registration Requirements, detailed in Part I above.  In addition, their opinions concerning the constitutionality of Section 2250 are not binding and contain only a cursory and unhelpful analysis of the complex Commerce Clause problems inherent in the statute.  In United States v. Madera, 474 F.Supp.2d 1257 (M.D.Fl. Jan. 16, 2007), the Court held that "the ability to track sex offenders as they move from state to state" was an activity that "substantially affects interstate commerce."  But, the Court did not examine any of the factors articulated in Lopez and Morrison that determine whether an activity "substantially affects interstate commerce," and

18

ignored the Supreme Court's direction that a court examine the
<u>economic</u> impact of the activity regulated, rather than whether it
might have non-economic interstate implications.  <u>Morrison</u>, 529
U.S. at 611 ("<u>Lopez's</u> review of Commerce Clause case law
demonstrates that in those cases where we have sustained federal
regulation of intrastate activity based upon the activity's
substantial effects on interstate commerce, the activity in
question has been some sort of economic endeavor").  The analysis
of the <u>Lopez</u> and <u>Morrison</u> factors, detailed above, demonstrates
that the activity regulated by Section 2250, which is the failure
to register in a state sex offense registry, does not
"substantially affect interstate commerce," and thus the
reasoning of the <u>Madera</u> court is wrong.

Similarly, the Court in <u>United States v. Templeton,</u> 2007 WL
445481 at *4 (W.D.Okla., Feb. 7, 2007), held that Section 2250
was valid simply because  "the statute includes a jurisdictional
nexus."  This holding is also incorrect.  As explained in
<u>Morrison</u>, the presence or absence of a jurisdictional element is
merely one factor in a larger inquiry into whether a statute
regulates an activity affecting interstate commerce, but is not
dispositive.  529 U.S. at 612.  Furthermore, the <u>Templeton</u> court
failed to consider that the jurisdictional element of Section
2250 is in no way related to a defendant's failure to register.
In order for a criminal statute to fall under the second category

of valid Commerce Clause legislation, which regulates people or things in interstate commerce, the interstate travel must be in some way related to the misconduct itself.  To hold otherwise would give Congress a blank check to federally criminalize any local offense simply by requiring a person "travel in interstate commerce" at some point in his life.  Since, <u>Madera</u> and <u>Templeton</u> ignore or misapply the Supreme Court's modern Commerce Clause jurisprudence, those decisions should not be followed here.

Section 2250 does not fall within any of the categories of activities that Congress may regulate through the exercise of its power under the Commerce Clause.  The statute is therefore unconstitutional and the Indictment must be dismissed.

<b><u>POINT III</u></b>

**THE INDICTMENT MUST BE DISMISSED BECAUSE IT VIOLATES THE <u>EX</u> <u>POST</u> <u>FACTO</u> CLAUSE OF THE CONSTITUTION.**

The registration requirements of SORNA delegate to the Attorney General, the authority to specify "the applicability" of SORNA's requirements to sex offenders convicted before the Act took effect.

> the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006, or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

20

42 U.S.C. § 16913(d).[3]   The Attorney General published no such rules until February 28, 2007. Therefore, when Mr. Mathews failed to register in New York and New Jersey as alleged in August 2006, he was not required to register under SORNA.   Since the requirement to register under SORNA is an element of Section 2250, as detailed in Point I above, Mr. Mathews cannot be prosecuted under 2250.   His conduct occurred prior to the implementation of the necessary regulations.

Article I, Section 9, of the United States Constitution prohibits Congress from passing any Ex Post Facto law.   The Ex Post Facto prohibition forbids Congress and the States from enacting any law that imposes a punishment for an act that was not punishable at the time it was committed, or that imposes a punishment in addition to that which was originally prescribed at the time of the criminal conduct.   Weaver v. Graham, 450 U.S. 24, 28 (1981).   SORNA was enacted on July 27, 2006. However, the Act's requirements, and its criminal penalties, did not become applicable to Mr. Mathews until the Attorney General took action seven months later (in February, 2007) to make them retroactively applicable.

Based on this authority, the Attorney General's Rule specified that SORNA applies to all sex offenders, including

---

[3] Subsection (b) concerns the initial registration of sex offenders, and requires a sex offender to register before release from imprisonment or within three days of being sentenced if not sentenced to a term of imprisonment.   42 U.S.C. § 16913(b)

those convicted of the offense for which registration is required
prior to the enactment of the Act.

Mr. Mathews asserts that the Ex Post Facto Clause requires
dismissal of the indictment on the grounds that the Attorney
General's regulations effectively created criminal penalties for
his failure to register after the date alleged in the indictment,
thereby violating the Ex Post Facto Clause.

The Supreme Court's ruling in Smith v. Doe, 538 U.S. 84
(2003), does not change the Ex Post Facto analysis here.  In
Smith, the Court ruled that an Alaska statute that required sex
offenders to register was not a violation of the Ex Post Facto
Clause, even though the registration requirements applied to
those convicted of sex offenses before the statute went into
effect.  There, the law was civil in nature, not punitive, and
thus did not implicate the Ex Post Facto Clause.  Id. at 105-106.
See United States v. Smith, 2007 WL 745001 at *6 (E.D. Mich.
2007)(holding that because Section 2250 is a criminal statute,
the Ex Post Facto rule applies to its application).

In Smith v. Doe, the issue was whether the legislature could
create a new registration requirement applicable to sex offenders
who had already committed an offense. The Court did not decide
the issue presented herein by Mr. Mathews. That is whether new
criminal penalties could be attached to conduct that had already
occurred.

22

The plain language of SORNA's registration requirements
delegates to the Attorney General the authority to determine the
Act's applicability to individuals, like Mr. Mathews, who were
convicted of sex offenses before the Act's enactment. See 42
U.S.C. § 16913. Until the Attorney General acted, the
registration requirements of SORNA did not apply to persons
convicted before July 26, 2006. See United States v. Deese, 2007
WL 2778362 (W.D. Oklahoma) at *2. (Holding that the defendant was
not required to register under the SORNA provisions until
February, 2007 and dismissing the indictment on Ex Post Facto
grounds).

Numerous district courts have concluded that SORNA did not
apply until the Attorney General's Interim Order and have
dismissed indictments on Ex Post Facto grounds finding that the
registration requirements and penalty provisions are criminal in
nature. See United States v. Gill  2007 WL 3018909 (D. Utah);
United States v. Smith 481 F.Supp. 2d 846 (E.D. Michigan
2007)(use of the term "travels" in 2250(a)(1)(B) denotes
prospective application, and the attempt to hide the enhanced
criminal penalties under the greater civil purpose of SORNA
doesn't evade that which is essentially civil); United States v.
Kapp 487 F.Supp. 2d 536 (M.D. Pennsylvania 2007); United States
v. Muzio 2007 WL 2159462 (E.D. Mo.); United States v. Smith 2007
WL 1725329 (S.D. West Virginia).

23

Section 2250,is a criminal statute that both subjects individuals to federal prosecution based on conduct that was not formerly a federal crime at all, and increases the penalty for conduct from one year to ten years.

The Indictment alleges that Mr. Mathews failed to comply with the Registration Requirements from August 1, 2006 until April 19, 2007. Since it alleges the initial conduct to have occurred on August 1, 2006, some seven months prior to the effective date under the Attorney General's Interim Order, it provides for criminal sanctions for an act that was not punishable at the time it was committed.

Any argument that failing to register as a sex offender is a continuing offense, and therefore the offense continued until after the date of the Attorney General's Order, as set forth in the indictment, is specious and should be rejected. SORNA requires a sex offender to notify a jurisdiction in which he is registered of any change of address within three business days of the change.  See 42 U.S.C. § 16913©.  If a sex offender changes his address and does not notify his jurisdiction, he is in violation of this registration requirement after the three days have run.  This violation does not "continue" indefinitely.  In Toussie v. United States, 397 U.S. 112 (1970), the Supreme Court held that failing to register for the draft is not a "continuing offense," but rather, it is committed when a person fails to

24

register five days after turning eighteen.  Noting that "the doctrine of continuing offenses should be applied in only limited circumstances," the Court held, "[t]here is [] nothing inherent in the act of registration itself which makes failure to do so a continuing crime.  Failing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of their plot."[4]  Id. at 122.  This holding clearly governs here.  Indeed, several district courts have addressed this issue and held that 2250 is not a continuing offense but rather occurs on the day when the registration deadline passes.  United States v. Smith, 2007 WL 735001, at *5; United States v. Deese, 2007 WL 2778362, at *3; United States v. Muzio, 2007 WL 2159462 at *5 (the criminal act is traveling and failing to register prior to the Attorney General's rule); United States v. Smith, 481 F.Supp. 2d at 852 (the crime occurs on the day following which the defendant travels and fails to register within the statutory time period).

     In Muzio, the defendant was indicted after February, 2007, but the Court dismissed the indictment finding that the crime had occurred when he "traveled" and failed to register, which occurred prior to that date.  In Deese, the indictment was

---

[4] The Court ruled that the registration requirements did not create a continuing violation even though a regulation passed under the act expressly stated "(t)he duty of every person subject to registration shall continue at all times, and if for any reason any such person is not registered on the day or one of the days fixed for his registration he shall immediately present himself for and submit to registration."  Toussie, 397 U.S. at 115-116.

dismissed even though it alleged that the crime occurred between July 2006 and July 2007.

## POINT IV

### THE INDICTMENT MUST BE DISMISSED BECAUSE THE STATUTE VIOLATES DUE PROCESS.

Section 2250 makes it a crime to "knowingly fail to register or update a registration as required by the Sex Offender Registration and Notification Act."  Mr. Mathews' conduct took place in the summer of 2005, one year before SORNA took effect. It was therefore impossible for him to "knowingly" fail to register "as required by" SORNA.  Since Mr. Mathews had no notice or knowledge of the Reporting Requirements, he cannot be prosecuted for violating Section 2250.

The Due Process Clause of the Fifth Amendment of the United States Constitution, U.S. Const. Amend. V, encompasses principles of notice, fair warning and foreseability, particularly in the context of criminal penalties.  Rogers v. Tennessee, 532 U.S. 451, 460 (2001).  In Lambert v. California, 355 U.S. 225 (1958), the Supreme Court invalidated, under the Due Process Clause, a prosecution for failing to register as a felon, as required by a city ordinance, because the defendant had no knowledge of or notice of the statute requiring registration.  The Court held, "[e]ngrained in our concept of due process is the requirement of notice… Notice is required in a myriad of situations where a

26

penalty or forfeiture might be suffered for mere failure to act."
Id. at 243.   Mr. Mathews could not have been on notice of SORNA's
requirements in August 2006, so the Indictment must be dismissed
on due process grounds.[5]

Nor is Mr. Mathews' knowledge of the existing New York and
New Jersey registration requirements a proxy for his knowledge of
the requirements of SORNA. In United States v. Barnes, 2007 WL
2119895 (S.D.N.Y.,) the District Court (Sand, J.) rejected this
argument by the Government and dismissed the indictment on narrow
due process grounds. SORNA's requirements are different than the
state provisions, and much stricter.  For example, upon changing
address, both New York and New Jersey law require a registered
offender to notify the registry within ten days of the change.
N.J. Stat. Ann. § 2C:7-2(d); N.Y. Correct. Law § 168-f.  SORNA
requires registrants to make change of address notifications
within three days.  42 U.S.C. § 16913©.  Similarly, in both New
York and New Jersey a first offense of failing to register is a
misdemeanor.  N.J. Stat. Ann. § 2C:7-2(a); N.Y. Correct. Law §
168-t.  SORNA's criminal provision for failure to register is a
felony.  18 U.S.C. § 2250(a).  These differences are substantial,
and indicate that knowledge of New York or New Jersey's
requirements cannot be equivalent to knowledge of SORNA's

---

[5] SORNA directs the Attorney General to prescribe rules for providing notice
of SORNA's requirements to sex offenders who were sentenced or released from
prison prior to SORNA's enactment.  42 U.S.C. § 16917.  To this date, no such
rules have been promulgated.

27

requirements.

In addition, because, neither New York nor New Jersey has passed legislation conforming their sex offense registries with SORNA's requirements, it would have been impossible for Mr. Mathews to have registered "as required by" SORNA.

SORNA directs each "jurisdiction" (which includes both states and jurisdictions other than states, 42 U.S.C. §§ 16911(9), 16912, 16927), to create a sex offender registry in accordance with the requirements of the Act.  42 U.S.C. § 16912. SORNA also directs the states to make it a felony offense to fail to register within the state.  42 U.S.C. § 16913(e).  Although both New York and New Jersey have sex offender registries that predate SORNA, neither has implemented the more detailed and onerous provisions of SORNA.[6]  It would therefore be impossible for Mr. Mathews to comply with the reporting requirements of SORNA in New York or New Jersey, as there is no state apparatus that would enable him to comply.  Criminalizing the failure to do something that is impossible to do violates the Due Process Clause's guarantee of fundamental fairness.  See e.g., United States v. Dalton, 960 F.2d 121, 124 (10th Cir. 1992)(it is a violation of fundamental fairness to hold someone liable for a crime when an essential element of the crime is his failure to

_____

[6] SORNA states "[e]ach jurisdiction shall implement this subchapter before the later of – (1) 3 years after July 27, 2006; and (2) 1 year after the date on which the software described in section 16923 of this title is available."  42 U.S.C. § 16924.  The states must therefore implement SORNA by July 27, 2009, at the earliest.

perform an act that he is incapable of performing).  As it was impossible for Mr. Mathews to comply with SORNA, the statute violates his due process rights and must be dismissed.

### POINT V

**THE INDICTMENT MUST BE DISMISSED BECAUSE THE STATUTE IMPERMISSIBLY ENCROACHES UPON STATE POWER AND THEREFORE VIOLATES THE TENTH AMENDMENT.**

The Registration Requirements, which impose a federal obligation on offenders to register in individual state-created and state-run sex offense registries, are an unconstitutional encroachment of federal power on state sovereignty.  The Registration Requirements therefore violate the Tenth Amendment and are invalid.  As described above, in order to violate Section 2250, a defendant must first be required to register under SORNA.  Since the Registration Requirements are unconstitutional, Mr. Mathews cannot be required to register under SORNA, and the Indictment must be dismissed.

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const., amend. X.  The Tenth Amendment has been applied to uphold the principles of federalism by limiting the power the federal government may exercise over state activities.  For example, the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering

29

federal law.  <u>Printz v. United States</u>, 521 U.S. 898, 935 (1997).

Although SORNA offers the states financial incentives to create

SORNA-compliant registries, 42 U.S.C. § 16925, no state has yet

created one.  However, the federal Registration Requirements,

which require individual sex offenders to register in their state

of residence, are currently in effect.  42 U.S.C. §§ 16913-26; 72

FR 8894, 8895, 2007 WL 594891 (2007).  The Registration

Requirements, therefore, force the state officials who run the

local registries to accept federally required sex offender

registrations before their state chooses to adopt the SORNA

provisions voluntarily.

    In <u>Printz</u>, the Supreme Court struck down a law requiring

local law enforcement officials to conduct background checks of

prospective handgun purchasers.  The Court held, "[t]he Federal

Government may neither issue directives requiring the states to

address particular problems, nor command the States' officers, or

those of their political subdivisions, to administer or enforce a

federal regulatory program."  521 U.S. at 935; <u>see</u> <u>also</u> <u>New York</u>

<u>v. United States</u>, 505 U.S. 144 (1992) (Congress did not have the

power to compel the states to enact a federal program regulating

the disposal of toxic waste).  The local law enforcement

officials in <u>Printz</u> are analogous to the law enforcement

officials who run state sex offender registries.  Just as

Congress has no power to compel local law enforcement to conduct

30

federally mandated background checks, it has no power to compel local law enforcement to accept registrations from federally mandated sex offender programs.  <u>See also</u> <u>United States v. Snyder</u>, 852 F.2d 471, 475 (9th Cir. 1988)("the federal government has no constitutional authority to interfere with a state's exercise of its police power except to the extent the state's action intrudes on any of the spheres in which the federal government itself enjoys the power to regulate").

To be sure, Congress can exercise its spending power to persuade the states to accept such registration, as Congress has attempted to do in SORNA.  However, no state has yet accepted Congress' invitation to change its law and instruct its own officials to comply with SORNA.  SORNA's registration requirements are therefore invalid under the Tenth Amendment and the Indictment must be dismissed.

**POINT VI**

**THE STATUTE MUST BE DISMISSED BECAUSE SORNA
VIOLATES THE NON-DELEGATION DOCTRINE.**

SORNA delegates to the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section."  42 U.S.C. §16913.  In addition,

31

Section 16917 delegates to the Attorney General the authority to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section." 42 U.S.C. §16917(b).

The effect of the delegation of authority described above is to permit the Attorney General to legislate the scope of the Act's retrospective reach. The authority to legislate or make law, however, is entrusted solely to Congress. U.S. Const. art. I, §§ 1, 8. This authority carries with it a corresponding limitation: Congress cannot delegate its legislative authority to another branch of the government. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 529 (1935) (explaining that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested"); Panama Refining Co. v. Ryan, 293 U.S. 388, 421, 432 (1935) (observing that "[i]f the citizen is to be punished for the crime of violating a legislative order of an executive officer . . ., due process of law requires that it shall appear that the order is within the authority of the officer").

The doctrine prohibiting Congress from delegating its authority to another branch is a necessary component of the separation of powers that informs our tripartite system of government and the checks and balances inherent in our constitutional framework. See Mistretta v. United States, 488

32

U.S. 361, 380-81 (1989) (describing the separation of powers as essential to the preservation of liberty).  In <u>Panama Refining Co.</u>, the Court invalidated a delegation of authority under the National Industrial Recovery Act ("NIRA") to the executive branch to prohibit the interstate transport of petroleum produced or withdrawn in violation of state law.  293 U.S. at 406, 432.  In so doing, the Court emphasized that the statute did not declare any policy respecting the transportation of excess production, did not qualify the President's authority, did not establish any criterion governing the President's course, and treated disobedience as a crime.  <u>See</u> <u>Id.</u> at 415.

Similarly, in <u>A.L.A. Schechter Poultry</u>, the Court addressed another provision of NIRA, which authorized the president to approve codes of fair competition from industry groups or prescribe such codes.  295 U.S. at 520-21.  A violation of a code was a crime, with each day of the violation constituting a separate offense.  See <u>Id.</u> at 523.  As in <u>Panama Refining Co.</u>, the Court focused or the absence of standards and restrictions in connection with the broad grant of authority.  <u>Id.</u> at 542. Such concerns are particularly significant where, as here, the delegation involves criminal liability.  <u>See</u> <u>Fahey v. Mallonee</u>, 332 U.S. 245, 249 (1947).[7]

---

[7] In the context of a delegation to criminalize certain conduct, a stricter standard ought to apply.  <u>See</u> <u>generally</u> <u>United States v. Robel</u>, 389 U.S. 258, 274, 75 (1967) (Brennen, J., concurring).  <u>But</u> <u>cf.</u> <u>United States v. Touby</u>, 909 F.2d 759, 765 (3d Cir. 1990)(acknowledging differing authority respecting the standard applicable in the criminal statutory context), <u>aff'd</u>, 500 U.S. 160,

In this case, the delegation extends to the chief law enforcement officer of the United States the power to determine the retrospective scope of a criminal statute.  In other words, it enables the executive branch to legislate the reach of a criminal statute with no limits on the Attorney General's exercise of his discretion.  He is free to decide how far back the registration requirements should be extended, now matter how arbitrary his decision might be.

This delegation is particularly troubling since retrospective legislation is disfavored, and, in those limited circumstances where it is permitted, a legislative policy judgment need be manifest.  See Immigration and Naturalization Service v. St. Cyr., 533 U.S. 289, 315-16 (2001); Landgraf, 511 U.S. 244, 271 (1994)(discussing the presumption against retroactive effect and emphasizing the need for clear language requiring retroactivity).  Here, there is no indication that Congress made such a judgment; rather, it improperly abdicated that legislative responsibility to the executive.

Congress may, of course, obtain assistance from other branches of government, provided that the legislative act lays down an intelligible principle that directs and fixes the discretion delegated to the agency or person.  See Mistretta, 488 U.S. at 372 (citing J.W. Hampton, Jr., & Co. v. United States,

166 (1991) (declining to reach the issue concerning the appropriate standard).

34

276 U.S. 394 (1928)).  This type of delegation is evinced by the rule-making authority given to agencies charged with administering significant environmental or economic mandates. See, e.g., Whitman v. American Trucking Ass'ns, Inc., 531 U.S. 457, 473-74 (2001) (approving a delegation of authority to the Environmental Protection Agency to set ambient air quality standards); Yakus v. United States, 321 U.S.414, 426 (1944) (concluding that the Price Administrator may fix prices under the Emergency Control Act of 1942).[8]

In the present matter, by contrast, the delegation is not limited to the implementation of the terms of SORNA, but permits the Attorney General to determine the very individuals SORNA applies to, with no standards to guide this determination.  This is precisely the type of delegation the Framers would have viewed as constitutionally impermissible.  SORNA is therefore unconstitutional under the non-delegation doctrine and the Indictment must be dismissed.

## CONCLUSION

The Indictment must be dismissed because: (1) Congress does not have the power under the Commerce Clause to compel

---

[8] Although delegation in the regulatory arena has been generally accepted in the wake of New Deal-era legislation, there has been considerable scholarly debate over the erosion of the non-delegation doctrine.  See, e.g., Jeffrey Rosen, The Unregulated Offensive, N.Y. Times, Apr. 17, 2005, §6, at 42; Symposium, The Constitution in Exile: Is it Time to Bring it in from the Cold?, 51 Duke L.J. 1(2001); Douglas H. Ginsburg, Delegation Running Riot, Regulation, No. 1, 1995, at 85 (reviewing David Schoenbrod, Power Without Responsibility: How Congress Abuses the People Through Delegation (1993)).

individuals convicted of state crimes to comply with SORNA's registration requirements; (2) Congress does not have the power under the Commerce Clause to enact Section 2250, SORNA's criminal provision; (3) the application of SORNA to Mr. Mathews violates the Ex Post Facto Clause; (4) the prosecution of Mr. Mathews for violating an act of which he had no notice, and which would have been impossible for him to comply with, is a violation of his Due Process rights; (5) SORNA forces state law enforcement officials to comply with a federal regulatory scheme, which violates the Tenth Amendment; and (6) SORNA violates the non-delegation doctrine.  For all these reasons, the Indictment against Mr. Mathews must be dismissed.

Respectfully submitted,

LEONARD F. JOY, ESQ
Federal Defenders of New York, Inc.
Attorney for Defendant
ANDRE MATHEWS
52 Duane Street, 10th Floor
New York, New York 10007
Tel.:  (212) 417-8713


Robert M. Baum,
Of Counsel